COUNTY OF MINNEHAHA, ex rel. WILLADSEN, Respondent, v. WILLADSEN, Appellant

(11 N. W.2d 55.)

(File No. 8595. Opinion filed September 10, 1943.)
Rehearing Denied November 29, 1943.

**E. B. Adams,** of Hot Springs, and **Roy E. Willy,** of Sioux Falls, for Appellant.

**T. G. Owen, Odean Hareid,** and **Danforth & Danforth,** all of Sioux Falls, for Respondent.

SMITH, J. Corlyss T. Willadsen entered a plea of guilty to an information charging him with the crimes of wife and child desertion, and was sentenced to serve one year in the county jail. Thereafter he applied to the court

for an order suspending the execution of his sentence. In granting the order, the court imposed certain conditions to which the defendant agreed in writing. The pertinent portion of that agreement reads: "I further agree that I will pay or cause to be paid to Elna Willadson, my wife, of Sioux Falls, South Dakota, the sum of Forty-five Dollars ($45.00) per month, commencing on the 1st day of June, 1938, and continuing to be payable on the first day of each and every month thereafter, this agreement to be in full force and effect until the surviving child of my marriage with said Elna Willadson shall attain the age of sixteen years, and I further agree to furnish good and sufficient bond in the penal sum of One Thousand Dollars ($1,000.00) as security for the performance of the terms and conditions of this agreement."

Prior to the entry of the order suspending the execution of the sentence, Corlyss T. Willadsen, as principal, and his father, P. H. Willadsen, as surety, executed and delivered their agreement in writing as follows:

"Whereas, on the 26th day of May, 1938, the above named defendant, C. T. Willadson, upon a plea of guilty to an information charging him with the crime of Wife and Child Desertion, was duly convicted and sentenced to imprisonment in the County Jail of Minnehaha County, South Dakota, for the period of One (1) year, by the above named Court; and

"Whereas, said Court has this day suspended the execution of said sentence of imprisonment upon conditions set forth in an Agreement and Order of Suspension among which conditions is a provision that the said C. T. Willadson will pay and cause to be paid to Elna Willadson, his wife, of Sioux Falls, South Dakota, the sum of Forty-five Dollars ($45.00) per month, commencing on the 1st day of June, 1938, and continuing to be payable on the first day of each and every month thereafter until the youngest living child of said marriage shall have attained the age of sixteen years, and as security for the performance of the terms and conditions providing in said Agreement and Order of Suspension

with respect to the payment of said monthly payments, will execute and deliver a good and sufficient bond in the penal sum of One Thousand Dollars ($1000.00) to be approved by this Court and conditioned upon the faithful and prompt payment of said sum of Forty-five Dollars ($45.00) on the first day of each and every month hereafter;

"Now, therefore, in consideration of the premises, the undersigned, C. T. Willadson, as principal, and P. H. Willadson, of Sioux Falls, South Dakota, as surety, do hereby jointly and severally undertake, promise and agree to and with the County of Minnehaha, a body politic of the State of South Dakota, in the penal sum of One Thousand Dollars ($1000.00) for the payment of which, well and truly to be made, we hereby jointly and severally bind ourselves, our heirs, executors and administrators, firmly by these premises, that the said C. T. Willadson will pay or cause to be paid the sum of Forty-five Dollars ($45.00) per month, commencing on the 1st day of June, 1938, and continuing to be payable on the first day of each and every month thereafter until the youngest living child of said marriage between the said principal, C. T. Willadson, and Elna Willadson, his wife, shall attain the age of sixteen years."

On the 18th day of October, 1940, after the expiration of the term of the sentence, the court entered a further order discharging and releasing Corlyss T. Willadsen from any further obligations thereunder. Payments were made to Elna Willadsen, the wife, until and including the 1st day of August, 1941. On August 4, 1941, Corlyss T. Willadsen died. Thereupon, and notwithstanding the fact that the deceased principal was survived by children who had not attained the age of sixteen years, the surety, P. H. Willadsen, asserted that he was absolved from liability under the foregoing instrument. In this action a declaratory judgment is sought to resolve the resulting controversy. The trial court held the surety liable and entered judgment for the aggregate of the monthly payments which became due thereunder during the period intervening the death of the principal and the date of that judgment.

██ The initial question for consideration deals with the right of Elna Willadsen, the third party beneficiary, to institute an action in the name of the county promisee for her use. The point that she was without right to use the name of the county in bringing her action was made by defendant by a motion to dismiss filed before answer. The trial court overruled the motion, and error is predicated here upon that ruling.

Whether the county, as a promisee, could bring an action on this instrument, in view of our statute requiring all actions to be brought by the real party in interest, SDC 33.0402, or whether, in view of that statute and of SDC 10.0204, which authorizes an action on a contract by a third party for whose express benefit it was made, Elna Willadsen could maintain an action in her own name (see Hollister v. Hubbard, 11 S. D. 461, 78 N. W. 949; Burkland v. Bliss, 62 S. D. 91, 252 N. W. 25; and 47 C. J. 31), are not the questions presented by this assignment. As indicated, the challenge is as to the right of Elna Willadsen to bring an action in the name of the county. That she had no such right is made plain by our statutes. Only the county commissioners, SDC 12.0617, or the state's attorney with the permission of the court, SDC 12.1303, are invested with power to commence actions in the name of the county. See 20 C. J. S., Counties, p. 1289, § 328. Counsel retained to answer the appeal virtually concedes error on this point and has failed to cite authority sustaining the adopted procedure. He urges, however, that because the litigation in fact has been conducted by Elna Willadsen, rather than by the nominal plaintiff, and the real controversy has been placed at issue, we should, in furtherance of a liberal policy dealing with amendments, treat the proceeding as though an amendment had been granted and limit our review to the merits. See 5 C. J. S., Appeal and Error, p. 238, § 1518. Because the defendant by timely and proper procedure has stoutly maintained his position throughout the course of this proceeding, and Elna Willadsen has just as stubbornly stood her ground and has failed to apply for an amendment at any

stage thereof, we do not feel justified in following the suggested course. Notwithstanding, however, that the case must be reversed because of the indicated error, we have determined to consider the merits.

Reasoning from the premise that the foregoing instrument is a bail bond, defendant contends that the action should have been dismissed because (1) it was neither alleged nor established that the undertaking had been forfeited, and (2) it was established that the bail was exonerated (a) by the order discharging the principal and (b) by the death of the principal.

■ At the time of the delivery of the undertaking in question it was provided by § 1472, Rev. Code 1919, as follows: "Upon those contracts of indemnity which are taken in legal proceedings, as security for the performance of an obligation imposed or declared by the tribunals, and known as undertakings or recognizances, the sureties are called bail." And it was further provided by § 1473, Rev. Code 1919: "The obligations of bail are governed by the statutes specially applicable thereto." Predicated on these sections defendant contends the instrument at issue, having been "taken in legal proceedings, as security for the performance of an obligation imposed or declared" by a tribunal, is a bail bond. By the use of the term "bail bond" we understand defendant to mean an undertaking securing the appearance of a principal defendant. The contention, in our opinion, is not supported by the quoted statutes. When these statutes are read in connection with those by which they are preceded, they but reveal an intention to make it clear that the rules there set forth as applicable in the construction of contracts of indemnity were not applicable to undertakings taken in judicial proceedings. To say that the sureties on judicial undertakings "are called bail" is not to say that all such undertakings are bail bonds, i.e., appearance bonds.

These statutes but removed such undertakings from the embrace of the preceding sections, and opened them to construction according to their terms and the special stat-

utes under which they were lodged. This construction of these statutes is implicit in the cited case of Palmer v. Baker, 45 S. D. 196, 186 N. W. 951. That case but held that an appeal bond in a civil case must be interpreted in the light of the special statutes under which it was delivered, and that the sections quoted supra rendered § 725, Rev. Code 1919, inapplicable.

It follows that in order to determine whether "forfeiture" is a condition precedent to the accrual of a cause of action against the surety or bail on the undertaking in question, or whether such surety was exonerated by the discharge or death of the principal defendant, we must look to the essential nature and terms of the instrument and the particular statute under which it was delivered.

 Under the provisions of §§ 4107 to 4112, Rev. Code 1919, one charged with wife or child desertion may be released "after arrest and before trial, or after conviction and before sentence", § 4110, if he will file an undertaking to support the wife or child. These statutes contemplate a forfeiture of the undertaking in case of default and a resumption of the proceedings. § 4111. We must, however, reject defendant's contention that the undertaking under consideration was lodged pursuant to these provisions. Corlyss Willadsen had been sentenced, and these statutes do not invest a court with power to suspend the execution of the sentence. The powers granted by these provisions are only operative "after arrest and before trial, or after conviction and before sentence."

 By Ch. 126, Laws 1931, enacted pursuant to § 39 of Art. V of the constitution of South Dakota, it is provided: "All Courts, having jurisdiction to try offenses under the laws of this State, and the Judges thereof, shall have power to suspend sentences of persons convicted, for the first time, of crime under the laws of this State during good behavior, subject to such conditions and restitutions as the Court or Judge thereof may impose; provided, however, that such conviction shall have occurred in the Court exercising such power." Through this enactment a court,

so long as it retains jurisdiction of the cause, is clothed with power to suspend the execution of a sentence. State ex rel. Conway v. Hughes, 62 S. D. 579, 255 N. W. 800. The undertaking was filed in the course of proceedings had under .this statute. In the absence of a statute controlling its terms and conditions, the principles governing the interpretation of simple contracts apply. See 65 C. J. 1214. In other words, the intention of the parties as revealed by the words of their contract when read in the light of the circumstances of its making is to be effectuated. When this contract is so read, it is obvious that the parties intended nothing more than to provide security for the promise to pay Elna Willadsen $45 per month. If it rested within the power of the court, or of the parties in the absence of an express statutory provision, to provide for a penalty to become forfeit to the county upon breach of the promise to pay, a subject we need not explore, it is clear that no such provision was contemplated by the parties. The underlying agreement which Corlyss Willadsen signed, the pertinent portion of which we have quoted supra, includes a promise to pay a monthly amount to the wife and "to furnish good and sufficient bond * * * as security" for the performance of that promise. The bond was filed in performance of this agreement. Thereby the surety became liable only for payments in default, not exceeding the penal sum of the bond. Restatement, Contracts § 339, comment h.; 50 C. J. 89. We are aware of no principle of contract law requiring an order forfeiting such an undertaking as a condition precedent to the accrual of a cause of action thereon. We hold the contention untenable.

■■ The condition quoted supra and the written agreement of the parties embraced obligations which would outrun the term of the sentence of Corlyss Willadsen. According to the terms of the undertaking its obligation would continue to have force after he would have become entitled to his discharge. See 24 C. J. S., Criminal Law, p. 196, § 1618. The promise was to pay until the youngest child attained the age of sixteen years. The mutual intention

thus clearly revealed is binding on the parties unless it can be said that the court exceeded its jurisdiction in imposing so extensive a condition. This we cannot say. The legislature did not place an explicit limitation on the power with which it invested the courts by Ch. 126, Laws 1931, supra, and the only implicit limitation on that power is that any condition imposed must be legal and reasonable. 24 C. J. S., Criminal Law, p. 183, § 1618. Manifestly the condition is not illegal, and in view of the nature of the offense for which sentence was passed, and of its relation to the continuing duty of the husband and parent to provide support for his wife and children, we conclude that it is not unreasonable. We hold that the undertaking was not discharged by either the expiration of the principal's sentence or by his discharge therefrom.

The effect of the death of the principal on the liability of the surety remains for consideration. This question has produced a conflict of authority under bonds filed in bastardy proceedings. Emmons v. Commonwealth, 197 Ky. 674; 247 S. W. 956, 31 A. L. R. 601. In distinguishing the cases which hold that death of the principal releases the surety, the court in that case said: "These cases proceed on the theory that, under the statutes of those states, a bastardy proceeding is a criminal proceeding; that the payment of money is a part of the sentence and not a debt; that the bond is given to insure the performance of the sentence, and, being executed for the benefit of the people, does not create the relation of debtor and creditor between the reputed father and the people." This statement of the Kentucky court serves to emphasize the importance of bearing in mind that in the case at bar we are interpreting a contract and that the revealed mutual intention of the parties must control decision. The precise question we must answer is whether the parties intended that the principal obligation should be discharged by death. If death released the principal, the surety may defend on that ground. Williston, Contracts § 1944.

 Contractual obligations which terminate at death

are exceptional and not typical. In re Witkind's Estate, 167 Misc. 885, 4 N. Y. S.2d 933, 937. The principal criterion which, in the absence of an express provision of the contract, indicates how a particular contract should be interpreted is stated as follows: "A duty that requires for its performance action that can be rendered only by the promisor or some other particular person is discharged by his death * * *." Restatement, Contracts § 459. That is to say, if the thing contracted for is the personal service or acts of the promisor, it is self-evident that the parties intended that the obligation should not survive his death.

In the instant case, the parties dealt with nothing but the impersonal payment of money. That obligation could be as well performed by a personal representative as by the promisor. The express agreement was to run "until the youngest living child shall have attained the age of sixteen years." It is not without significance that in the undertaking, executed by both principal and surety, the parties agreed that we hereby "jointly and severally bind ourselves, our heirs, executors and administrators, firmly by these premises." We perceive nothing here to indicate an intention that the obligation of the principal should be discharged by his death. See Stone v. Bayley, 75 Wash. 184, 134 P. 820, 48 L. R. A., N. S., 429. We therefore hold that the liability of the defendant surety was unaffected by the death of the principal.

For the error pointed out in response to the first assignment considered, the judgment of the learned trial court is reversed.

All the Judges concur.