MR. JUSTICE HASWELL
(concurring):
I concur in the result reached by the majority. However, with respect to the issue of the constitutionality of the death penalty, the majority opinion relies too heavily on tenuous analogy to the statutory schemes of other states analyzed in Gregg v. Georgia, *317 . . . U.S. . . ., 96 S.Ct. 2909, 49 L.Ed.2d 859; Proffitt v. Florida, . . . U.S. . . ., 96 S.Ct. 2960, 49 L.Ed.2d 913; and Jurek v. Texas, . . . U.S. ..., 96 S.Ct. 2950, 49 L.Ed.2d 929, all decided July 2, 1976. In my view the precise application of Montana statutes to the imposition of the death penalty is left in a dense fog. This concurring opinion attempts to describe the constitutional application of the Montana statutes.
The cumulation of majority opinions in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), led to considerable confusion among the several states’ legislatures which desired to retain a constitutionally viable death penalty. In some jurisdictions Furman was read as requiring a strictly mandatory death sentence for certain classes of proven crimes. This view was laid to rest by the decisions in Roberts v. Louisiana, . . . U.S. . . ., 96 S.Ct. 3001, 49 L.Ed.2d 974, and Woodson v. North Carolina, . . . U.S. . . ., 96 S.Ct. 2978, 49 L.Ed.2d 944, (both decided July 2, 1976), and by this language in Gregg at pp. . . . and . . . of . . . U.S., 2932 and 2935 of 96 S.Ct.:
"Furman mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.
<< ifi sfc ife Sfc sfc
“In summary, the concerns expressed in Furman that the penalty of death not be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance. As a general proposition these concerns are best met by a system that provides for a bifurcated proceeding at which the sentencing authority is apprised of the information relevant to the imposition of sentence and provided with standards to guide its use of the information.” (Emphasis supplied).
Thus, statutory schemes which impose the death penalty in a wholly mandatory or wholly discretionary fashion do not pass *318 constitutional muster. I believe the Montana laws effective at the date of the crimes in the instant case are in that constitutionally permissible middle ground between unbending mandatory death sentences and unbridled discretion in the imposition of death sentences.
To ensure that death sentences are not “wantonly” or “freakishly” imposed (Furman v. Georgia, 408 U.S. 238, 310, 92 S.Ct. 2726, 33 L.Ed.2d 346) the United States Supreme Court in its most recent pronouncements on the subject, seems to have established three general criteria which are requisite to a valid death penalty statutory scheme. See e.g., Jurek v. Texas, . . . U.S. . . ., 96 S.Ct. 2950, 49 L.Ed.2d 929.
First, there must be at least one statutory aggravating circumstance before a death sentence may even be considered. Second, the defense must be afforded the opportunity to bring before the sentencing body at a separate sentencing hearing any mitigating circumstancés relating to the individual defendant. Third, there must be available prompt judicial review of the sentencing decision by a court of statewide jurisdiction, providing a means to promote the evenhanded, rational, and consistent imposition of death sentences under law.
The death penalty statutes under attack in the instant case, sections 94-5-105 and 94-5-304, R.C.M.1947, as they existed at the time of the crimes, satisfy the first criterion set forth above. The death sentence cannot be imposed unless one of six aggravating circumstances is found by the trier of fact to exist. The majority opinion herein adequately shows that this condition was found in the instant case.
The second criterion, that mitigating circumstances be reviewed at a separate sentencing hearing, is satisfied by two separate statutory provisions: First, both death penalty statutes provide that the court “shall” impose a sentence of death “unless there are mitigating circumstances”. Defendant urges that the “unless” clause may purport to circumscribe the sentencing judge’s authority, but that there are no guiding standards nor *319 sources of information provided for. This argument ignores the second statutory provision relevant here, that is, the presentence investigation and report provisions. Section 95-2203, R.C.M. 1947, requires a written presentence investigation report to be delivered to and considered by the sentencing court in felony cases. Section 95-2204, R.C.M. 1947, provides the report shall contain information respecting “the characteristics, circumstances, needs, and potentialities of the defendant; his criminal record and social history; the circumstances of the offense; * * * and the harm to the victim, his immediate family, and the community.” The report provides the sentencing authority with whatever circumstances may exist in mitigation of the defendant’s conduct.
Reading the two provisions together, the sentencing court is required to consider mitigating circumstances, and is required to consider the presentence investigation report which must contain any matters relevant to mitigation. In addition, all sentencing courts are directed by section 95-2201, R.C.M. 1947, to perform their sentencing functions “to the end that persons convicted of a crime shall be dealt with in accordance with their individual characteristics, circumstances, needs and potentialities.” This mandates the imposition of sentences which are not disproportionate to the severity of the crime. Finally, the defendant is authorized to seek a hearing to present to the court his testimony and evidence in mitigation of punishment.
Prompt judicial review of death sentences is provided for by appeal to this Court, as well as appeal to the Sentence Review Division. This Court determines the legality of the sentence imposed, State v. Simtob, 154 Mont. 286, 462 P.2d 873, while the review division is designed to determine the appropriateness of the sentence with respect to the individual offender and particular offense.
In summary, although Montana’s statutory scheme is unlike those approved by the United States Supreme Court in Gregg, Proffitt and furek, I can see no substantive failure of Montana’s *320 statutory scheme to comply with constitutional standards. Our system is neither wholly mandatory nor wholly discretionary. There are precise statutory requirements for finding aggravating and mitigating circumstances, and a procedure for flushing out the facts with respect to such circumstances. There is appellate review at two levels, insuring that the sentence is both legal and proportional to the nature and class of the crime. In short, I believe that the statutory scheme in existence at the time of the crimes herein, affords defendant the procedural safeguards necessary to protect his substantive right to be sentenced without arbitrariness or caprice.